

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

ENTERED
03/04/2009

In re:                                §
                                      §
NORTH BAY GENERAL                     §          Case No. 08-20368-H4-11
HOSPITAL, INC.,                       §          Chapter 11
                                      §
        Debtor.                       §

## MEMORANDUM OPINION ON (1) DEBTOR'S OBJECTION TO CLAIM NUMBER 88; AND (2) UNSECURED CREDITOR AGENT'S MOTION TO CONFIRM AUTHORITY
[Docket Nos. 146 & 168]

### I. INTRODUCTION

In the case at bar, an individual has requested that this Court confirm his authority to represent a group of unsecured creditors. He purports to hold such authority not by virtue of a power of attorney and not by virtue of any agreement between himself and the creditors he seeks to represent. Rather, he claims to have such authority because the debtor's confirmed plan of reorganization in a prior case provided for the appointment of "an unsecured creditor agent"—a position which he later accepted. The issue addressed in this opinion is whether an individual may represent a distinct group of unsecured creditors in a Chapter 11 case simply by virtue of his appointment as an "unsecured creditor agent" in the confirmed plan in a prior case.

The agency relationship is, by definition, a personal one. It involves entrusting one's rights and interests to another and does not arise involuntarily. This Court believes that full legal authority to represent a creditor's interest in a second bankruptcy requires more than a confirmed plan's appointment of an unsecured creditor agent in a prior bankruptcy case. For the reasons set forth herein, the unsecured creditor agent's motion to confirm his authority should be denied and the debtor's objection to the proof of claim filed by the unsecured creditor agent should be sustained.

## II. Findings of Fact

1. On February 9, 2005, North Bay General Hospital, Inc. (the Debtor) filed a Chapter 11 petition in this Court commencing case number 05-32121 (the First Case). [Case No. 05-32121, Docket No. 1.]

2. On November 16, 2005, the Debtor filed a Second Amended Chapter 11 Plan of Reorganization (the 2005 Plan or the Plan). [Case No. 05-32121, Docket No. 248.]

3. Paragraph 4.6 of the 2005 Plan provides that Class 6, comprised of the claims of all general unsecured creditors (the Old Unsecured Creditors), may choose one of two plan payment options prior to the voting deadline: (1) payment of the full allowed amount of their claims pursuant to a monthly installment schedule, or (2) immediate payment of 25% of the allowed amount of their respective claims. [Case No. 05-32121, Docket No. 248, ¶ 4.6.]

4. Paragraph 6.6 of the 2005 Plan also provides for the designation of an Unsecured Creditor Agent (UCA) for the following purposes:

> (i) collecting funds due to Class 6 Creditors, (ii) monitoring and reporting on the Reorganized Debtor's compliance with its payment duties to Class 6 Creditors, (iii) pursuing and enforcing the rights of Class 6 Creditors under the Plan under the Bankruptcy Code and other applicable laws, if necessary (iv) administering and prosecuting any and all Claims against AMT[1] and McNaull,[2] if (a) the Reorganized Debtor fails to comply with its payment obligations to Class 6 Creditors or (b) AMT or McNaull gives notice of termination of the Tolling Agreement,[3] (v) waiving the restrictions applicable

---

[1] "AMT" refers to AMT Group, Inc., a corporation that owned 100% of the equity interest in the Debtor prior to and during the First Case.

[2] "McNaull" refers to Thomas McNaull, the former president of the Debtor and 100% owner of AMT.

[3] "The Tolling Agreement" refers to an agreement among the holder of the interests in Class 7, AMT, McNaull, the UCA, and the Debtor to, inter alia, preserve any claims that the Debtor may have against AMT or McNaull (and vice versa), and to assign such claims owned by the Debtor to the UCA.

2

to AMT under the Parent Injunction[4] and the NEWCO Restrictive Endorsement[5] and (vi) such other rights and remedies as are set forth herein.

[Case No. 05-32121, Docket No. 248, ¶ 6.6.]

5.   In the event that the Debtor failed to make payments to the Old Unsecured Creditors under the 2005 Plan, paragraph 10.1 of the 2005 Plan provides that the UCA "shall immediately be permitted to, and shall have legal standing to, (a) prosecute, for the benefit of the Debtor, any and all alleged claims against AMT and McNaull, as preserved under the Tolling Agreement, (b) bring on shortened notice, any motion or adversary proceeding in the Bankruptcy Court to compel compliance with the Plan or as otherwise appropriate, (c) enforce any and all of the obligations of the Debtor or the Reorganized Debtor, and (d) assert and enforce any rights or remedies, in the Bankruptcy Court or any other court of competent jurisdiction." [Case No. 05-32121, Docket No. 248, ¶ 10.1.]

6.   On June 21, 2006, the Debtor made modifications to the 2005 Plan. [Case No. 05-32121, Docket No. 405.]  The modified 2005 Plan designates Schuyler G. Carroll as the UCA.

7.   On June 30, 2006, in the First Case, this Court issued an order confirming the 2005 Plan. [Case No. 05-32121, Docket No. 412.]

8.   After confirmation of the 2005 Plan, the reorganized Debtor was unable to successfully make

---

[4] "The Parent Injunction" refers to the provision in article 11 of the 2005 Plan, which enjoins AMT from transferring its assets outside the ordinary course of business before the allowed claims in Class 6 are paid in full or until the UCA provides written consent.

[5] "NEWCO" refers to the new company set up to receive 100% of the equity interests in the Debtor pursuant to the Plan. Pursuant to the Plan, AMT, the old equity holder, was required to transfer its 100% equity interest in the Debtor to NEWCO in exchange for 10,000 shares of NEWCO common stock. Specifically, the 10,000 shares of NEWCO stock were required to be transferred to McNaull, the 100% owner of AMT. "The Restrictive Endorsement" refers to certain language that the Plan provided would appear on the 10,000 NEWCO share certificates representing AMT's interest in NEWCO. Pursuant to the Restrictive Covenant, NEWCO was not allowed to receive any distributions from the Debtor until the allowed claims in Class 6 had been paid in full or the UCA gave written consent for such distributions.

the payments required under the 2005 Plan.

9.  On July 8, 2008, the reorganized Debtor filed a second Chapter 11 petition in this Court, commencing the instant case (the Second Case).  [Docket No. 1.]

10.  The deadline to file a proof of claim in the Second Case was November 17, 2008.  [Docket No. 37.]

11.  On November 14, 2008, the UCA filed Proof of Claim 88, which consists of "allowed unsecured claims pursuant to prior confirmed plan" in the aggregate amount of $1,872,448.59.

12.  On November 24, 2008, the Debtor filed its written objection to Proof of Claim 88 (the Objection).  [Docket No. 146.]  In the Objection, the Debtor complains that Proof of Claim 88 should be disallowed because: (1) the UCA has no authority to make a claim on behalf of the Old Unsecured Creditors; (2) Proof of Claim 88 is duplicative of other claims filed by certain unsecured creditors in this case; and (3) the UCA was required—but failed—to attach a power of attorney to Proof of Claim 88.

13.  On December 15, 2008, the UCA filed a response to the Objection.  [Docket No. 183.]

14.  On December 5, 2008, the UCA filed an "Emergency Motion of the Unsecured Creditor Agent to Confirm Authority, Powers, Duties and Procedures Under Confirmed Plan and to Require Debtor to Comply with Terms Thereof or, in the Alternative, to Establish Procedures for Matters Related to Confirmed Plan as to Unsecured Creditors" (the Motion to Confirm Authority).  [Docket No. 168.]  In the Motion to Confirm Authority, the UCA requests that this Court issue an order confirming the authority, power, and duties of the UCA under the 2005 Plan and requiring the Debtor to comply with its terms.  Specifically, the UCA requests

4

an order allowing the UCA to do the following:

(i)     serve as the representative of the [Old Unsecured Creditors] in [the Second Case];

(ii)    recover and collect funds due to [the Old Unsecured Creditors];

(iii)   appear and be heard on all matters in [the Second Case] as representative of the [Old Unsecured Creditors];

(iv)   monitor and report on the Debtor's compliance or non-compliance with the payment duties to [the Old Unsecured Creditors] and to otherwise enforce the rights of [the Old Unsecured Creditors] in [the Second Case];

(v)    pursue and enforce the rights of [the Old Unsecured Creditors] under the [2005 Plan], the Bankruptcy Code and applicable law;

(vi)   file a proof of claim in [the Second Case] on behalf of [the Old Unsecured Creditors];

(vii)  administer and prosecute all claims against AMT and McNaull under the [2005 Plan] as preserved in the Tolling Agreement (as defined in the [2005 Plan]);

(viii) receive and disburse all payments and distributions to [the Old Unsecured Creditors] and to direct the Disbursing Agent in accordance with the [2005 Plan]; and

(ix)   receive compensation and reimbursement of expenses as provided under the [2005 Plan] (and to otherwise direct the Debtor to make such payments on a timely basis).

In the alternative, the Motion to Confirm Authority requests that this Court establish procedures and protocols with respect to the Old Unsecured Creditors.

15.    On December 8, 2008, the Debtor filed a response opposing the Motion to Confirm Authority. [Docket No. 171.]

16.    On December 10, 2008, this Court held a hearing on the Motion to Confirm Authority. At this hearing, the UCA offered exhibits, which were admitted by the Court. The Court

continued this hearing until January 14, 2009.

17.  On January 9, 2009, the UCA filed a brief in support of the Motion to Confirm Authority.
[Docket No. 216.]  On January 12, 2009, the UCA amended his brief.  [Docket No. 225.]

18.  On January 13, 2009, the Debtor filed a brief opposing the Motion to Confirm Authority.
[Docket No. 231.]

19.  On January 14, 2009, this Court held a hearing on the Objection and held the continued
hearing on the Motion to Confirm Authority.  The Court continued both of these hearings
until February 3, 2009.

20.  On February 3, 2009, this Court completed the hearing on the Objection and the Motion to
Confirm Authority. The Court heard closing arguments of counsel and took the matters under
advisement.

21.  On February 13, 2009, the UCA filed a "Verified Statement of Schuyler G. Carroll,
Unsecured Creditor Agent, Pursuant to Rule 2019(a) of the Federal Rules of Bankruptcy
Procedure" (the 2019 Disclosures).  [Docket No. 254.] Attached to the 2019 Disclosures are
two documents.  The first is the 2005 Plan.  [Docket No. 254, Ex. A.]  The second is a
document listing all the Old Unsecured Creditors whom the UCA seeks to represent in this
case.  [Docket No. 254, Ex. B.]

### III. CONCLUSIONS OF LAW

**A.     Jurisdiction**

The Court has jurisdiction over these two contested matters pursuant to 28 U.S.C. §§
1334(b), 157(a), and 157(b)(1).  These disputes are core proceedings pursuant to 28 U.S.C. §§
157(b)(2)(A), (B), and (O).  Additionally, these two matters are core proceedings under the general

"catch-all" language of 28 U.S.C. § 157(b)(2).  *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th

Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by

title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy

case."); *In re Ginther Trusts*, No. 06-3556, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a

matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list

of core proceedings under § 157(b)(2) does not specifically name this particular circumstance").

Venue is proper pursuant to 28 U.S.C. § 1408(1).

**B.      The UCA's Authority to Represent the Old Unsecured Creditors in the Second Case**

The UCA contends that the 2005 Plan permits him to fully represent the Old Unsecured

Creditors in the Second Case. This Court disagrees.  First, the UCA's failure to timely comply with

Bankruptcy Rule 2019 precludes the UCA from having authority to represent the Old Unsecured

Creditors in this Second Case.  The fact that the UCA was appointed pursuant to the confirmed plan

in the First Case does not somehow vitiate the need to fully comply with Bankruptcy Rule 2019 in

this Second Case.  Second, it would be both inappropriate and unfair to allow the UCA to represent

a sub-group of unsecured creditors with respect to certain claims while leaving other similarly

situated unsecured creditors to fend for themselves.

**1.      Bankruptcy Rule 2019**

Any entity seeking to represent more than one creditor in a Chapter 11 case must file an

application that conforms with the requirements of Federal Rule of Bankruptcy Procedure 2019

(Bankruptcy Rule 2019).[6] Bankruptcy Rule 2019 requires that "every person purporting to represent

---

[6] For example, Bankruptcy Rule 2019 applies to attorneys that seek to represent more than one creditor or equity interest holder. *In re CF Holding Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992).  Informal creditors' committees must also comply with Bankruptcy Rule 2019.  *City of Lafayette, Colorado v. Oklahoma P.A.C. First Ltd. P'ship. (In*

more than one creditor in a chapter 11 reorganization case file a verified statement setting forth the

names and addresses of the creditors, the nature and amount of the claims and the relevant facts and

circumstances surrounding employment of the 'agent'." *In re Elec. Theatre Rests. Corp.*, 57 B.R.

147, 148-49 (Bankr. N.D. Ohio 1986); *see also In re Baldwin-United Corp.*, 52 B.R. 146, 148

(Bankr. S.D. Ohio 1985) (same); *In re Southland Corp.*, 124 B.R. 211, 226 (Bankr. N.D. Tex. 1991)

("Bankruptcy Rule 2019 requires the filing by every entity representing more than one creditor or

equity security holder of a verified statement with the Court setting forth specific facts concerning

the representation, and the names of the parties represented."). Specifically, Bankruptcy Rule 2019(a)

provides:

> In a . . . chapter 11 reorganization case . . . every entity or committee representing
> more than one creditor . . . shall file a verified statement setting forth (1) the name
> and address of the creditor or equity security holder; (2) the nature and amount of the
> claim or interest and the time of acquisition thereof unless it is alleged to have been
> acquired more than one year prior to the filing of the petition; (3) a recital of the
> pertinent facts and circumstances in connection with the employment of the entity or
> indenture trustee, and, in the case of a committee, the name or names of the entity or
> entities at whose instance, directly or indirectly, the employment was arranged or the
> committee was organized or agreed to act; and (4) with reference to the time of the
> employment of the entity, the organization or formation of the committee, or the
> appearance in the case of any indenture trustee, the amounts of claims or interests
> owned by the entity, the members of the committee or the indenture trustee, the times
> when acquired, the amounts paid thereof, and any sales or other disposition thereof.

Fed. R. Bankr. P. 2019(a).

Bankruptcy Rule 2019(a) also requires that the entity provide "a copy of the instrument, if

any, whereby the entity, committee, or indenture trustee is empowered to act on behalf of creditors."

---

*re Okla. P.A C. First Ltd. P'ship)*, 122 B.R. 387, 393 (Bankr. D. Ariz. 1990).  However, committees appointed under
§ 1102 or 1114 of the Bankruptcy Code are excused from the requirements of Bankruptcy Rule 2019.  Fed. R. Bankr.
P. 2019(a) (requiring specific disclosures "except with respect to a committee appointed pursuant to § 1102 or 1114 of
the Code").

*Id.*; *see also In re CF Holding*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992) ("The respondents shall file a copy of any instrument empowering the respondents to act on behalf of the listed entities."); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 851-52 (Bankr. S.D.N.Y. 1989) ("Bankruptcy Rule 2019 requires that an entity must file an instrument which empowers the entity to act on behalf of the creditors . . . absent such consent an agent may not legitimately represent the interests of the individuals."). Normally, "this includes an executed power of attorney authorizing counsel to file a proof of claim." *Id.* at 853.

"The purpose of Rule 2019 is to further the Bankruptcy Code's goal of complete disclosure during the business reorganization process, and was designed to cover entities which, during the bankruptcy case, act in a fiduciary capacity to those they represent, but are not otherwise subject to the control of the court." *In re CF Holding*, 145 B.R. at 126 (citing 8 Collier on Bankruptcy ¶ 2019.03 at 2019-4 (15th ed. 1992)); *see also City of Lafayette, Colorado v. Okla. P.A.C. First Ltd. P'ship. (In re Okla. P.A.C. First Ltd. P'ship)*, 122 B.R. 387, 393 (Bankr. D. Ariz. 1990) ("It is part of the Chapter 11 reorganization process that all matters should be done openly and subject to scrutiny, whether it is the proposal of a plan of reorganization, representation of the debtor, or representation of numerous creditors—secured or unsecured."). Additionally, a properly executed and timely filed 2019 application provides "a strong indicator of agent status for service of initial process." *The Muralo Co., Inc. v. All Defendants Listed On Exhibits A Through D to Complaint (In re Muralo)*, 295 B.R. 512, 524 (Bankr. D.N.J. 2003).

The consequences of a purported agent's failure to comply with Bankruptcy Rule 2019 are largely a matter for the bankruptcy court's discretion. *In re Mandalay Shores Coop. Hous. Ass'n, Inc.*, 63 B.R. 842, 853 (N.D. Ill. 1986). Bankruptcy Rule 2019(b) provides:

> On motion of any party in interest or on its own initiative, the court *may* (1) determine whether there has been a failure to comply with the provisions of subdivision (a) of this rule or with any other applicable law regulating the activities and personnel of any entity, committee, or indenture trustee or any other impropriety in connection with any solicitation and, if it so determines, the court may refuse to permit that entity, committee, or indenture trustee to be heard further to intervene in the case . . . and (3) hold invalid any authority, acceptance, rejections, or objection given, procured, or received by an entity or committee who has not complied with this rule or with § 1125(b) of the Code.

Fed. R. Bankr. P. 2019(b) (emphasis added). Courts exercising discretion under Bankruptcy Rule 2019(b) have imposed a variety of consequences for failing to comply with Bankruptcy Rule 2019(a). For example, in *Reid v. White Motor Corp. (In re Reid)*, the court found that a "unilateral assertion of fiduciary status in [a] proof of claim was insufficient to satisfy the formal requirements of Rule 2019," and held that a "failure to comply with Rule 2019 is cause for denial of the proof of claim." 886 F.2d 1462, 1471 (6th Cir. 1989); *accord Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Products Corp.)*, 89 B.R. 358 (Bankr. S.D.N.Y. 1988) (disallowing proofs of claim filed by a creditor-class representative who failed to comply with Bankruptcy Rule 2019). Additionally, in *In re Ionosphere Clubs, Inc.*, a purported agent's failure to fully comply with Bankruptcy Rule 2019 resulted in the denial of his motion to intervene. 101 B.R. at 852-53. In *In re CF Holding Corp.*, the bankruptcy court excused a creditor-class representative's failure to comply with Bankruptcy Rule 2019, but ordered the representative to file a supplemental statement in compliance with the rule. 145 B.R. at 127. Finally, in *In re Vestra Indus. Inc.*, the bankruptcy court determined that a creditor-class representative's failure to comply with Bankruptcy Rule 2019 precluded him from representing multiple creditors in the debtor's Chapter 11 case, but extended the bar date in order to allow the individual creditors to file their respective proofs of claim. 82 B.R. 21, 22-23 (Bankr. D.S.C. 1987).

Some courts have excused representatives of a certified class of creditors from complying with Bankruptcy Rule 2019.[7] This is so because these courts have found "the idea of 'class' to be incompatible as a practical matter with the nature and extent of the information required by Rule 2019(a)." *In re Craft*, 321 B.R. 189, 192 (Bankr. N.D. Tex. 2005). However, the UCA is not a certified class representative. Rather, he purports to represent a discrete group of unsecured creditors with outstanding claims under the 2005 Plan; and there is no question that Bankruptcy Rule 2019(a) applies "to the formal organization of a group of creditors holding similar claims, who have elected to consolidate their collection efforts."[8] *Wilson v. Valley Elec. Membership Corp.*, 141 B.R. 309, 315 (E.D. La. 1992).

### a. The UCA's failure to comply with Bankruptcy Rule 2019 precludes the UCA from representing the Old Unsecured Creditors in this case.

Bankruptcy Rule 2019(b) provides that "[o]n a motion of any party in interest or on its own

---

[7] *See, e.g., In re Craft*, 321 B.R. 189, 194 (Bankr. N.D. Tex. 2005) ("[G]iven the nature of class actions, class representatives should not be required to comply with Rule 2019(a) at all."); *In re Am. Reserve Corp.*, 840 F.2d 487, 493 n.6 (7th Cir. 1988) (stating that Rule 2019, which requires an agent to explain the circumstances of its agency, is satisfied as to a class representative by a bankruptcy court's certification of a class); *Trebol Motors Distrib. Corp. v. Bonilla (In re Trebol Motors Distrib. Corp.)*, 220 B.R. 500, 503 (B.A.P. 1st Cir. 1998) ("As we have held that a previously certified class is a single claimant, compliance with Fed. R. Bankr. P. 2019 was unnecessary."); *Wilson v. Valley Elec. Membership Corp.*, 141 B.R. 309, 314-15 (E.D. La. 1992) (stating that compliance with Rule 2019 in the context of a class action is impractical); *In re Spring Ford Indus., Inc.*, No. 02-15015DWS, 2004 WL 231010, at *4 (Bankr. E.D. Pa. Jan. 20, 2004) ("I find that Rule 2019 is inapplicable to the Claimants, who lack the information needed to comply with it. Moreover, to the extent that Rule 2019's requirements have any applicability . . . the rule's requirement will be satisfied nunc pro tunc by court certification of the class . . . .") (citations omitted).

[8] Nearly all of the cases dealing with an authorized agent's authority to file proofs of claims on behalf of a group of creditors arise in the context of a class representative seeking to assert and enforce claims on behalf of a class of creditors. This Court could not locate any cases involving an "unsecured creditor agent." However, the concept is largely the same. Here, the UCA has asserted that he has authority to file a proof of claim as the appointed "representative" of a group of unsecured creditors whose claims have not been fully paid pursuant to the 2005 Plan. To the extent that there is a split in authority on whether a court's certification of a class excuses a representative from complying with Bankruptcy Rule 2019, this Court need not address the issue. It is enough to say that the UCA purports to have authority pursuant to the confirmed 2005 Plan and not by way of his appointment as a class representative in a class action proceeding. Additionally, because the Old Unsecured Creditors are nearly all trade creditors—and not class members—there is no danger that the Old Unsecured Creditors "may not recognize their entitlement to file [a proof of claim] unless some champion appears." *In re Am. Reserve Corp.*, 840 F.2d at 489.

initiative, the court may . . . determine whether there has been a failure to comply with the provisions of [Bankruptcy Rule 2019(a)] . . . and, if it so determines, the court may refuse to permit that entity . . . to be heard further or to intervene in the case." Fed. R. Bankr. P. 2019(b). Thus, an entity's "failure to comply with Bankruptcy Rule 2019 alone can result in this Court refusing to permit an entity to be heard or further intervene in this case and hold invalid any authority given, procured or received by [the] entity." *In re Ionosphere Clubs, Inc.*, 101 B.R. at 852. Based on the gross untimeliness of the 2019 Disclosures and the circumstances that prompted its filing, this Court finds that the UCA has failed to comply with Bankruptcy Rule 2019(a) and that he should not be permitted to be heard further or to intervene in this case.

The UCA filed the 2019 Disclosures on February 13, 2009—ten days after the conclusion of the hearing on his Motion to Confirm Authority, [Findings of Fact No. 20 & 21], and nearly one hundred days after the UCA filed Proof of Claim 88. [Finding of Fact No. 11.] In the 2019 Disclosures, he states that pursuant to paragraph 6.6 of the 2005 Plan, he is authorized to "serve as representative of [the Old Unsecured Creditors] for the purposes of: (i) collecting funds due to [the Old Unsecured Creditors] , . . . [and] (iii) pursuing and enforcing the rights of [the Old Unsecured Creditors] under the Plan and the Bankruptcy Code and other applicable laws, if necessary . . . ." [Docket No. 254.] Attached to the 2019 Disclosures is a list identifying the Old Unsecured Creditors that the UCA seeks to represent and the amount of their respective claims. [Docket No. 254, Ex. B.] The UCA's decision to file the 2019 Disclosures was unquestionably prompted by the argument made by counsel for the Debtor at the February 3, 2009 hearing that the UCA's failure to comply with Bankruptcy Rule 2019 precludes the UCA from representing the Old Unsecured Creditors in this Second Case. At the hearing, in response to this argument, the UCA asserted that he was not

required to comply with Bankruptcy Rule 2019 by virtue of the fact that his authority stemmed from a confirmed plan in a prior case. However, ten days later, the UCA filed the 2019 Disclosures—apparently worried that the Debtor's argument had merit.

For the reasons stated above, this Court disagrees with the UCA's assertion that the 2005 Plan excuses the UCA from complying with Bankruptcy Rule 2019. *See also infra* Part III(C)(1)(c). Further, this Court will not allow the UCA to "lay behind the log" in the manner that he did. The UCA had all the information contained in the 2019 Disclosures well before the bar date, well before he filed Proof of Claim 88, and well before the Second Case was filed. Yet, the UCA chose to ignore the requirements of Bankruptcy Rule 2019 until after the Debtor raised the issue at the February 3 hearing.

The UCA filed Proof of Claim 88 on behalf of the Old Unsecured Creditors on November 14, 2008. The UCA attached a document to Proof of Claim 88 asserting that it contains the claims of certain unsecured creditors whom have not been fully paid pursuant to the 2005 Plan. The deadline to file a proof of claim in this case was November 17, 2008. [Finding of Fact No. 10.] However, it was not until February 13, 2009, that the UCA saw fit to disclose the names and the amount of claims held by the Old Unsecured Creditors that he purports to represent.[9] [Finding of Fact No. 21.]

The fact that the bar date had long since passed when the UCA filed the 2019 Disclosures provides a particularly compelling reason to disregard them. When the UCA filed Proof of Claim

---

[9] The Debtor's schedules and the proofs of claim filed by unsecured creditors in the First Case are no substitute for valid 2019 disclosures in this Second Case. The UCA did not cite to the Debtor's schedules or the claims register in the First Case, but even if he had, a list of unsecured creditors provided for under the 2005 Plan would not shed light on: (1) which of those unsecured creditors have not been paid in full pursuant to the 2005 Plan; and (2) the amount of each claim that each respective Old Unsecured Creditor is asserting in the Second Case. Bankruptcy Rule 2019(a) requires that both of these facts be disclosed.

88 on November 14, 2008, he did not disclose: (1) whom he purports to represent, (2) the amount of each claim comprising Proof of Claim 88, or (3) copies of the documents on which the claims are based. Bankruptcy Rule 3001 requires that *all* of this information be included with a proof of claim. *See* discussion *infra* Part III(C)(2). However, the UCA did not provide *any* of this information until February 13, 2009—nearly one hundred days after the bar date and only after the Debtor objected to the UCA's Motion to Confirm Authority and Proof of Claim 88. This Court will not retroactively acknowledge the 2019 Disclosures. To do so would reward the UCA's failure to comply with Bankruptcy Rule 3001 by allowing him to make an end run around the bar date and by blessing his lackluster and seriously late attempt to comply with Bankruptcy Rule 2019(a). *See, e.g.*, *Gebhardt v. Gartner (In re Gartner)*, 326 B.R. 357, 373-74 (Bankr. S.D. Tex. 2005) (rejecting Chapter 7 debtor's argument that his late amendments rectified his initial failure to make required disclosures). Further, accepting the 2019 Disclosures at this late date would frustrate the "goal of complete disclosure during the business reorganization process" on which Bankruptcy Rule 2019 is based.[10] *In re CF Holding*, 145 B.R. at 126.

---

[10] This goal of complete disclosure applies with equal force to debtors as well as creditors. This Court has no more sympathy for debtors who fail to make disclosures required by the Bankruptcy Code and the Bankruptcy Rules than it does for creditors who fail to do so. *See generally, e.g.*, *In re Cochener*, 360 B.R. 542 (Bankr. S.D. Tex. 2007) (sanctioning debtor for abusing the bankruptcy process, including filing false schedules, failing to appear at creditors' meetings, and failing to produce certain documents to the Chapter 7 trustee); *In re Ortiz*, No. 05-39982, 2006 WL 2946500 (Bankr. S.D. Tex. Oct. 13, 2006) (sanctioning debtor for various abuses of the bankruptcy process, including filing a second petition in direct violation of another bankruptcy judge's order, failing to file accurate schedules, and failing to appear at a scheduled show cause hearing); *Askanase v. Lawley (In re Lawley)*, No. 05-03296, 2006 WL 2090209 (Bankr. S.D. Tex. June 30, 2006) (denying Chapter 7 debtor's motion for rehearing of this Court's order denying the debtor a discharge where the debtor failed to produce documents, and failed to disclose an interest in an oil and gas leasehold); *Gebhardt v. Gartner (In re Gartner)*, 326 B.R. 357 (Bankr. S.D. Tex. 2005) (denying Chapter 7 debtor a discharge where the debtor failed to schedule certain assets with the intent to deceive and failed to disclose certain financial records).

**b.    Even if the UCA had fully complied with Bankruptcy Rule 2019, this Court would deny the Motion to Confirm Authority.**

This Court would not be inclined to grant the Motion to Confirm Authority even if the UCA had fully complied with Bankruptcy Rule 2019 because appointing the UCA to represent the Old Unsecured Creditors in the Second Case would frustrate, rather than foster, judicial efficiency and economy as well as administrative convenience.

First, the UCA seeks to represent only the Old Unsecured Creditors—not all unsecured creditors—in the Second Case. Specifically, in his Motion to Confirm Authority, the UCA seeks to represent claimants that he refers to as "the Class 6 Creditors"—that is, the Old Unsecured Creditors provided for under the 2005 Plan. This Court sees no reason to appoint a representative for a sub-group of unsecured creditors simply because their pre-petition debts arise from a confirmed plan in a prior Chapter 11 case. Indeed, to do so could give a sub-group of unsecured creditors an unfair advantage over other unsecured creditors whose claims also arise from pre-petition contracts entered into with the Debtor. The 2005 Plan—and the Old Unsecured Creditors' rights thereunder—is treated as a pre-petition contract in the Second Case. *See, e.g.*, *In re Page*, 118 B.R. 456, 460 (Bankr. N.D. Tex. 1990) ("In essence, the plan becomes a binding contract between the debtor and the creditors and controls their rights and obligations."). It makes little sense to appoint a representative for some unsecured creditors but not others—especially where their claims are substantially similar in nature (i.e. the claims of the Old Unsecured Creditors and the claims of unsecured creditors whose claims arose between the First Case and the Second Case are all based on pre-petition contracts). This Court will not appoint a representative for only the Old Unsecured Creditors simply because their rights arise from a previously confirmed plan.

15

Second, the UCA does not seek to fully represent the Old Unsecured Creditors in this Second Case, but rather seeks to represent them only with respect to claims which they hold pursuant to the 2005 Plan.  The 2019 Disclosures state that the Old Unsecured Creditors "may have additional or new claims against the Debtor that arose after entry of the Confirmation Order [in the First Case]" and that "the UCA does not represent any [of the Old Unsecured Creditors] for such additional or new claims." [Docket No. 254.]  Thus, the UCA seeks to represent the Old Unsecured Creditors with respect to certain claims but not others.  Allowing the UCA to represent the Old Unsecured Creditors in this limited fashion will complicate the administration of this case.  If, for example, the Debtor attempts to solicit votes on a proposed plan of reorganization, it would have to send ballots to the UCA for certain claims of the Old Unsecured Creditors, but directly to each Old Unsecured Creditor for others.  Additionally, the UCA could not be the designated recipient of service of process for the Old Unsecured Creditors.  Rather, the Debtor—or, indeed, any other party who files a pleading in this case that might affect the interests of the Old Unsecured Creditors—will have to determine which of the Old Unsecured Creditors have claims over and above those being prosecuted by the UCA and serve them separately.  Finally, to the extent that an Old Unsecured Creditor's claim is disputed, each dispute will require this Court to determine whether the UCA or the individual Old Unsecured Creditor has standing to appear.

To appoint the UCA as representative for *certain* unsecured creditors only with respect to *certain* claims would require the Debtor and this Court to wade through a quagmire of overlapping claims, due process concerns, and multifarious standing issues.  This, the Court will not do.  Therefore, the Motion to Confirm Authority should be denied and, pursuant to Bankruptcy Rule 2019(b), this Court should "refuse to permit [the UCA] . . . to be heard further or to intervene in the

case."[11]  Fed. R. Bankr. P. 2019(b).

**C.      The Debtor's objection to Proof of Claim 88 should be sustained.**

The Debtor's objection to Proof of Claim 88 should be sustained for the following reasons:
First, the UCA is without authority to file proofs of claim on behalf of the Old Unsecured Creditors
because: (1) as discussed above, the UCA has failed to comply with Bankruptcy Rule 2019; (2) the
2005 Plan does not expressly authorize the UCA to file proofs of claim on behalf of the Old
Unsecured Creditors; and (3) the UCA does not qualify as the Old Unsecured Creditors' "authorized
agent" under the general principles of agency law.  Second, Proof of Claim 88 does not comply with
Bankruptcy Rule 3001(a) and (c) because: (1) it does not contain the names of the individual
claimants (i.e. the specific Old Unsecured Creditors to whom the Debtor has outstanding obligations
under the 2005 Plan) or the amounts of their respective claims; (2) the UCA has not attached the
documents that form the basis for the Old Unsecured Creditors' claims; and (3) there is significant
overlap between Proof of Claim 88 and numerous other proofs of claim that individual Old
Unsecured Creditors have filed in this Second Case.

**1.      The UCA does not have authority to file Proof of Claim 88.**

11 U.S.C. § 501(a) provides that "[a] creditor or an indenture trustee may file a proof of
claim."  Federal Rule of Bankruptcy Procedure 3001(b) provides that "[a] proof of claim shall be
executed by the creditor or the creditor's authorized agent except as provided by Rules 3004 and
3005."  The UCA is not among the claimants it purports to represent and indeed, "[n]owhere in the
[Bankruptcy] Code is 'creditor' defined as a . . . 'representative' of a group."  *In re Elec. Theatre*

---

[11] That the UCA is not permitted to represent the Old Unsecured Creditors in this Second Case neither prohibits
nor absolves the UCA from continuing to defend himself and be bound by any judgment rendered in Adversary
Proceeding 08-3422 in which the UCA is a defendant.

*Restaurants Corp.*, 57 B.R. 147, 148 (Bankr. N.D. Ohio 1986).  Accordingly, because the UCA is not a guarantor, surety, indorser, or other co-obligor pursuant to Bankruptcy Rule 3004 or 3005, he is only authorized to file Proof of Claim 88 on behalf of the Old Unsecured Creditors if he qualifies as their "authorized agent" under Bankruptcy Rule 3001(b).  This Court embarks on this inquiry keeping in mind that "[t]he requirement that each creditor must file a proof of claim should be strictly enforced."  *In re Standard Metals Corp.*, 48 B.R. 778, 784 (D. Colo. 1985).  Indeed, "[t]he importance of the language of subsections (b) and (e)(1) of Bankruptcy Rule 3001 is that each individual claimant or transferee of an unfiled claim must file a proof of claim, or expressly authorize an agent to do so on its behalf."  *Manville Forest Prods. Corp.*, 89 B.R. at 376.

The UCA contends that he has authority to file Proof of Claim 88 as the "authorized agent" of the Old Unsecured Creditors because the 2005 Plan gives the UCA authority to: (i) collect funds due to the Old Unsecured Creditors; (ii) monitor and report on the Debtor's compliance with its payment duties to the Old Unsecured Creditors; and (iii) enforce the rights of the Old Unsecured Creditors under the 2005 Plan. [Proof of Claim 88, Attachment.]  For the reasons set forth below, this Court disagrees.

### a. The 2005 Plan's provision for the UCA's powers and duties does not empower the UCA to act as an authorized agent in the Second Case.

It is noteworthy that the Supreme Court chose to employ the term "*authorized* agent" in Bankruptcy Rule 3001(b).[12]  Use of the qualification "authorized" reflects the Supreme Court's intention that an entity that files a proof of claim on another's behalf have express—and not merely implied—permission to do so.  As the Tenth Circuit has recognized, "An agent may file a proof of

---

[12] The Federal Rules of Bankruptcy Procedure are promulgated by the Supreme Court of the United States.

claim only for those individuals who have *expressly authorized* the agent to do so." *In re Standard Metals*, 817 F.2d 625, 631 (10th Cir. 1987), *vacated on other grounds by* 839 F.2d 1383 (10th Cir. 1987); *see also Mission Towers v. Grace*, No. 07-287, 2007 WL 4333817, at *9 (D. Del. Dec. 6, 2007) (same); *In re Ionosphere Clubs, Inc.*, 101 B.R. at 852 ("Only when an agent has *express authorization* may he file a claim on behalf of another." (emphasis added)); *Manville Forest Prods. Corp.*, 89 B.R. at 376 ("[E]ach individual claimant or transferee of an unfiled claim must file a proof of claim, or *expressly authorize* an agent to do so on its behalf." (emphasis added)).  The cornerstone of authorized agent status is express authorization from the principal permitting the agent to file a proof of claim on the principal's behalf.  As such, the UCA was not permitted to file Proof of Claim 88 unless each Old Unsecured Creditor expressly authorized the UCA to do so.

Paragraph 6.6 of the 2005 Plan—the provision outlining the powers and duties of the UCA—does not provide that the UCA shall have authority to file a proof of claim on behalf of the Old Unsecured Creditors.  Rather, paragraph 6.6 provides that a UCA is to be appointed for the following six specific purposes:

> (i) collecting funds due to Class 6 Creditors, (ii) monitoring and reporting on the Reorganized Debtor's compliance with its payment duties to Class 6 Creditors, (iii) pursuing and enforcing the rights of Class 6 Creditors under the Plan under the Bankruptcy Code and other applicable laws, if necessary (iv) administering and prosecuting any and all Claims against AMT and McNaull, if (a) the Reorganized Debtor fails to comply with its payment obligations to Class 6 Creditors or (b) AMT or McNaull gives notice of termination of the Tolling Agreement, (v) waiving the restrictions applicable to AMT under the Parent Injunction and the NEWCO Restrictive Endorsement and (vi) such other rights and remedies as are set forth herein.

[Finding of Fact No. 4.]  The only language in paragraph 6.6 that might reasonably be construed as a provision for authority to file a proof of claim on behalf of the Old Unsecured Creditors is the

language allowing the UCA to "pursu[e] and enforc[e] the rights of the Class 6 Creditors under the Plan under the Bankruptcy Code and other applicable laws."[13]  However, this provision is far too general to constitute "express authorization" that the UCA file proofs of claim on behalf of the Old Unsecured Creditors in the Second Case.  The language in paragraph 6.6 allowing the UCA to enforce the Old Unsecured Creditors' rights under the 2005 Plan does not constitute express authorization that the UCA may file claims on behalf of the Old Unsecured Creditors in this Second Case.

<b>b.      The 2005 Plan's appointment of a UCA does not create an agency relationship between the UCA and the Old Unsecured Creditors.</b>

Even if the language in paragraph 6.6 of the 2005 Plan expressly provided that the UCA could file proofs of claim on behalf of the Old Unsecured Creditors, this fact alone would not authorize the UCA to act as the Old Unsecured Creditors' agent.  The Supreme Court's use of the term "authorized *agent*" in Bankruptcy Rule 3001(b) indicates that the principles of agency govern whether an entity is authorized to file proofs of claim on behalf of another.  *See, e.g., Kahler v. FIRSTPLUS Fin., Inc. (In re FIRSTPLUS Fin., Inc.)*, 248 B.R. 60, 71 (Bankr. N.D. Tex. 2000) ("[T]he sanctioning of an authorized agent to file a proof of claim on behalf of a creditor in Rule 3001(b) is  . . a codification of one of the general principles of agency.").

Agency is a fiduciary relationship which arises when one acts on behalf of another and is subject to his control.  *Aetna Ins. Co. v. Glens Falls Ins. Co.*, 453 F.2d 687, 690-91 (5th Cir. 1972). Before an agency relationship can arise "there must be a meeting of the minds in establishing the

---

[13] The provision of paragraph 6.6 of the 2005 Plan allowing the UCA to pursue "such other rights and remedies as are set forth herein" would not encompass the filing of a proof of claim on behalf of the Old Unsecured Creditors in this Second Case.  No provision of the 2005 Plan addresses the rights and remedies of the Old Unsecured Creditors in a subsequent bankruptcy case.

20

agency, and the consent of both the principal and the agent is necessary to create the agency, although such consent may be implied rather than expressed. The principal must intend that the agent act for him, the agent must intend to accept the authority and act on it, and the intention of the parties must find expression in either words or conduct between them." *Va. Sur. Co., Inc. v. Wright*, No. 06-41723, 2008 WL 18145, at *3 (5th Cir. Jan. 22, 2008) (quoting *Elite Towing, Inc. v. LSI Fin. Group*, 985 S.W.2d 635, 643 (Tex . App.—Austin 1999, no pet.)); *see also Hand v. Dean Witter Reynolds, Inc.*, 889 S.W.2d 483, 493 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("[A]gency is a consensual relationship on both sides, i.e., both the principal and the agent must agree that the agent will act on behalf of the principal."). In short, "[t]he purported agent must have been assigned and instructed by the purported principal to carry out the task he was performing." *Slotkin v. Citizens Cas. Co. of N.Y.*, 614 F.2d 301, 322 (2d Cir. 1979). In *Ionosphere Clubs, Inc.*, the Bankruptcy Court for the Southern District of New York explained the nature of an agency relationship as it relates to filing proofs of claim in bankruptcy court:

> If CU purports to act as an agent on behalf of ticketholders, it needs to show that this general agency relationship is consensual in nature. A fiduciary relationship results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to the control, and consent of the person to act. It is critical that the agency relation exists only if there has been a manifestation by the principal to the agent that the agent may act on his account. Absent such consent an agent may not legitimately represent the interests of individuals.

*In re Ionosphere Clubs, Inc.*, 101 B.R. at 852-53 (internal marks and citations omitted). Therefore, an agency relationship between the Old Unsecured Creditors (as principals) and the UCA (as agent) cannot have arisen unless each of the Old Unsecured Creditors consented to the UCA acting on their behalf and being subject to their control.

Though some of the Old Unsecured Creditors may have voted for the 2005 Plan, participation

in the plan confirmation process in the First Case does not constitute a clear manifestation of consent by *each* Old Unsecured Creditor that the UCA act on their behalf in this Second Case. "[A]gency will not be presumed, and the party asserting the relationship has the burden of proving it." *Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 733 (Tex. App.—Houston [14th Dist.] 2008, no pet) (quoting *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 588 (Tex. App.—Houston [14th Dist.] 2005, no pet.)); *see also In re Ionosphere Clubs, Inc.*, 101 B.R. at 853 (determining that Bankruptcy Rule 2019 places the burden on the party seeking agency status for several claimants). It is therefore the UCA's burden to prove that each Old Unsecured Creditor consented to his representing them in this Second Case.[14] Because the UCA has adduced no evidence that each of the Old Unsecured Creditors authorized him to file proofs of claim on their behalf, this Court concludes that the UCA is not the authorized agent of the Old Unsecured Creditors and is therefore without authority to file Proof of Claim 88.

        **c.**     **The 2005 Plan's provision of authority to the UCA does not excuse the UCA from complying with Bankruptcy Rule 2019 in this Chapter 11 case.**

The UCA's failure to comply with Bankruptcy Rule 2019—as described above in section III(B)(1)(a)—provides separate and independent cause for sustaining the Objection. *See Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989) ("Failure to comply with Rule 2019 is

---

[14] This Court recognizes that Bankruptcy Rule 2019 applies only in Chapter 11 and Chapter 9 cases. This is why the District Court for the Northern District of Texas has held that, in a Chapter 7 case, "Rule 3001(b) does not require an attorney acting as agent for a group of creditors to produce proof of agency until evidence controverting the agency has been presented." *In re Great W. Cities, Inc.*, 107 B.R. 116, 120 (N.D. Tex. 1989). However, that court expressly acknowledged that in Chapter 11 cases "[Bankruptcy] Rule 2019 requires agents to file a verified statement explaining the circumstances of their agency" and determined that "[w]hile many of the concerns relevant to application of Rule 2019 exist in the context of group representation in a [C]hapter 7 proceeding, the statutory language mandates that the Rule does not apply in such a proceeding." *Id.* at 120 n.16. Because Bankruptcy Rule 2019 requires a purported agent to come forward with specific disclosures evidencing the source of his representative authority, one who purports to represent multiple creditors in a Chapter 11 case does, indeed, have the initial burden of establishing his agency relationship.

cause for denial of the proof of claim."). Indeed, a number of bankruptcy courts have determined that a failure to comply with Bankruptcy Rule 2019 precludes a party from acting as a creditor's authorized agent pursuant to Bankruptcy Rule 3001(b). The Bankruptcy Court for the Northern District of Ohio determined that a purported creditor-class representative was precluded from filing a proof of claim where he "failed to aver that he is the agent of each and every [member] of the class and that he is specifically authorized by each claimant to file a proof of claim on their behalf" pursuant to Bankruptcy Rule 2019. *In re Elec. Theatre Rests. Corp.*, 57 B.R. at 148. The Bankruptcy Court for the Southern District of Ohio reached the same conclusion with respect to creditor-class representatives who failed to make 2019 disclosures. *In re Balwin-United Corp.*, 52 B.R. 146, 148-49 (Bankr. S.D. Ohio 1985). The Bankruptcy Court for the Southern District of Texas, in a Chapter 11 case presided over by former Judge T. Glover Roberts, likewise sustained an objection to a proof of claim filed by a union representative who failed to comply with Bankruptcy Rule 2019. *In re Cont'l Airlines Corp.*, 64 B.R. 874, 880 (Bankr. S.D. Tex. 1986).

*Continental Airlines* is particularly instructive. In that case, a union representative, pursuant to authority granted to it under the Railway Labor Act and its labor contracts with individual railroad employees, filed a proof of claim on behalf of those employees in the debtor's Chapter 11 case. The bankruptcy court determined that the union representative did not have authority to file the proof of claims for four independent reasons, all of which are implicated in this case.

First, the court strongly emphasized that "the nature of reorganization proceeding under the Bankruptcy Code is significantly different from the determination of rights and remedies under a labor contract." *Id.* at 879. The latter "cannot suffice to confer authority to the Unions to file and pursue bankruptcy claims [on] behalf of individual employees." *Id.* The facts of this case compel

a similar result.  As discussed above, the 2005 Plan is simply treated as a pre-petition contract in this Second Case.  As such, the 2005 Plan does not carry some special status that supercedes the requirements of Bankruptcy Rule 2019.  Just the contrary; the 2005 Plan does not, by itself, confer authority to the UCA to represent the interests of the Old Unsecured Creditors in this Second Case. This is so because—unlike a typical prepetition contract—a confirmed plan of reorganization, although binding on both debtor and creditor, is not entered into at arms length between the two. A plan of reorganization is confirmed by democratic process, not by mutual consent.  *See, e.g., In re DRW Prop. Co.*, 54 B.R. 489, 497 (Bankr. N.D. Tex. 1985) ("11 U.S.C. § 1121-1129 delineates the basic machinery which Congress has provided for creditor democracy within the debtor reorganization process.").  Filing proofs of claim on behalf of others requires an agency relationship, which can exist "only if there has been a manifestation by the principal to the agent that the agent may act on his account."  *In re Ionosphere Clubs, Inc.*, 101 B.R. at 853.  Because the Old Unsecured Creditors r ever consented to the UCA's representation of their interests in this Second Case, the 2005 Plan may not serve as a source of authority for the UCA to pursue claims on behalf of the Old Unsecured Creditors.

Second, "the process of requiring individual proofs of claim can and does work, and avoids the substantial difficulties of ascertaining standing and scope of authority" of third-party representatives.  *In re Cont'l Airlines Corp.*, 64 B.R. at 880.  The Court agrees with this assessment, especially when taken with the policy that "[t]he requirement that each creditor must file a proof of claim should be strictly enforced."  *In re Standard Metals Corp.*, 48 B.R. at 784.  Here, as discussed above, the UCA seeks to represent a sub-group of unsecured creditors and only to the extent that such creditors have claims pursuant to the 2005 Plan; the UCA acknowledges that it has no authority

to pursue claims of the Old Unsecured Creditors that have arisen between the First and Second Case. If this Court were to recognize the UCA's purported authority in this Second Case, substantial difficulty and confusion would ensue. With respect to due process, certain Old Unsecured Creditors would need to be kept apprised of matters affecting their more recent claims, but not on matters concerning their claims under the 2005 Plan, because the latter claims would be represented by the UCA. Additionally, standing issues are sure to arise from the UCA representing some of the claims of the Old Unsecured Creditors, but not others. In short, to grant the Motion to Confirm Authority would create an administrative morass.

Third, the union representative in *Continental Airlines* did not have associational standing by Supreme Court standards because the claims at issue required "individualized proof" and because "it [was] necessarily the individual claimant creditors, not the Unions, who would vote any allowed claims on the Debtor's plan of reorganization." *In re Cont'l Airlines Corp.*, 64 B.R. at 880 (citing *Hunt v. Wash. Apple Adver. Comm'n*, 432 U.S. 333 (1977) and *Warth v. Seldon*, 422 U.S. 490 (1975)). The same is true in this case. It is the individual Old Unsecured Creditors, not the UCA, who will ultimately vote their claims. Indeed, the UCA himself filed a separate proof of claim—Proof of Claim 87—for his own unsecured claim against the Debtor, which also arises out of the 2005 Plan.[15]

Fourth, the union's claims had to be dismissed as a matter of bankruptcy policy because "(1) their claims are filed en masse, with no attempt to identify the individuals allegedly entitled to

---

[15] That the UCA has his own general unsecured claim against the Debtor, which he has pursued separately from his pursuit of claims on behalf of the Old Unsecured Creditors, also creates a potential conflict of interest. For example, if a proposed plan places the UCA's claim in a separate class, he might be influenced to vote the claims of the Old Unsecured Creditors to ensure his own claim receives the most favorable treatment.

recover on each claim or the value of each individual's entitlement; (2) the various claims by each Union may duplicate or overlap each other; (3) the Union claims may duplicate or overlap the claims filed by the individuals; and (4) the Union claims are subject to unspecified set-offs, such as interim earnings and mitigation." *Id.* Herein lies the proverbial "rub." Proof of Claim 88 does not identify the individual claimants; it does not identify the amounts each claimant is allegedly entitled to recover on each claim; and it does not contain any documents evidencing that such claims exist. That the UCA attached a document to Proof of Claim 88 stating that "the [2005 Plan] appointed Schuyler Carroll as the Unsecured Creditor Agent" and summarizing paragraph 6.6 of the 2005 Plan is of no import. The Sixth Circuit has held that an attorney's "unilateral assertion of fiduciary status in his proof of claim was insufficient to satisfy the formal requirements of Rule 2019." *Reid*, 886 F.2d at 1471. Even if this Court were to overlook the UCA's failure to satisfy the requirements of Bankruptcy Rule 3001(a) and (c), as discussed *infra* Part III(C)(2), Proof of Claim 88 also overlaps with proofs of claim filed in this Second Case by certain individual Old Unsecured Creditors. Indeed, when the UCA finally filed his 2019 Disclosures, the Court discovered numerous instances where a creditor with claims contained in Proof of Claim 88 filed potentially duplicative claims in this case.[16]  Because the UCA has no authority to file Proof of Claim 88 and because "[t]he requirement that each creditor must file a proof of claim should be strictly enforced," the Objection should be sustained. *In re Standard Metals Corp.*, 48 B.R. at 784.

---

[16] A chart of the potentially overlapping claims in this Second Case is attached to this Memorandum Opinion as Addendum A.

2.      **Proof of Claim 88 does not comply with Bankruptcy Rule 3001.**

The Objection should also be sustained because Proof of Claim 88 does not contain the information required by Bankruptcy Rule 3001 and the UCA has made no attempt to amend Proof of Claim 88 to contain such information.[17]  Bankruptcy Rule 3001 prescribes the form and content of a proof of claim.  Bankruptcy Rule 3001(a) requires that "[a] proof of claim shall conform substantially to the appropriate Official Form."  Bankruptcy Rule 3001(c) requires that "[w]hen a claim is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim."  Bankruptcy Rule 3001(f) provides that "[a] claim filed in compliance with Bankruptcy Rule 3001 will be considered a prima facie valid claim."

A proof of claim that fails to comply with Bankruptcy Rule 3001 is deprived of prima facie validity. *In re Rally Partners, Ltd. P'ship*, 306 B.R. 165, 168 (Bankr. E.D. Tex. 2003); *see also First Nat'l Bank of Fayetteville v. Circle J. Dairy (In re Circle J. Dairy, Inc.)*, 112 B.R. 297, 300 (W.D. Ark. 1989) ("A proof of claim does not qualify for prima facie evidentiary effect if it is not executed and filed in accordance with the Bankruptcy Rules.").  It is the claimant's burden to allege facts in the proof of claim that are sufficient to support the claim. *In re Rally Partners*, 306 B.R. at 168. Although incomplete or insufficient proofs of claim do not enjoy prima facie validity, they are not

---

[17] The 2019 Disclosures filed by the UCA on February 13, 2009—nearly one hundred days after the bar date—does not constitute an amendment to Proof of Claim 88. First, as discussed above, this Court will not retroactively acknowledge the UCA's late attempt to comply with Bankruptcy Rule 2019. Second, the UCA has not supplemented Proof of Claim 88 with the information provided in its untimely 2019 Disclosures. Third, based on this Court's holding in *Gilbreath* and its discretion to disallow amendments to proofs of claim, this Court would not now allow an amendment to Proof of Claim 88; the bar date has long since expired and the UCA has not sought leave to amend. *See In re Gilbreath*, 395 B.R. 356, 365-67 (Bankr. S.D. Tex. 2008) (determining that once a debtor successfully objects to a proof of claim, the Court may elect to apply Bankruptcy Rule 7015 and Federal Rule of Civil Procedure 15, which requires the creditor to obtain leave of court or consent of the debtor before amending the proof of claim); *In re Eden*, 141 B.R. 121, 123-24 (Bankr. W.D. Tex. 1992) (acknowledging the bankruptcy court's discretion to allow amendments to defective proofs of claim after the bar date as a matter of equity).

automatically disallowed. *In re Gilbreath,* 395 B.R. 356, 364 (Bankr. S.D. Tex. 2008). However, once the debtor makes a valid objection to a deficient proof of claim, the claim's validity becomes a "contested matter" and the burden shifts back to the creditor to prove the claim is valid by a preponderance of the evidence. *Id.* (citing 11 U.S.C. § 502; *In re O'Connor*, 153 F.3d 258, 260-61 (5th Cir.1998); *In re Fid. Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir.1988)).

### a. The UCA failed to attach the requisite documentation to Proof of Claim 88 or provide an adequate reason for failing to do so.

"Attaching supporting documentation is a mandatory prerequisite to establishing a claim's prima facie validity." *In re Taylor*, 363 B.R. 303, 308 (Bankr. M.D. Fla. 2007). Bankruptcy Rule 3001(a) requires that "[a] proof of claim shall conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). Moreover, Bankruptcy Rule 9009 requires that the Official Forms "shall be observed." Fed. R. Bankr. P. 9009. Form 10—the official proof of claim form—instructs creditors to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages and security agreements" or a summary of such documents. Form 10 also instructs that "[i]f the documents are not available, please explain." Considering the specificity of these instructions, a creditor cannot substantially comply with Form 10 by filing a proof of claim without any documentation or, at the very least, an explanation for why such documents are unavailable. *See In re Gilbreath*, 395 B.R. at 362-63. "The rules rightfully require creditors to attach minimal supporting documentation for their claims so that a debtor can evaluate their validity without discovery or extraordinary expense." *In re Armstrong*, 320 B.R. 97, 104 (Bankr. N.D. Tex. 2005).

Additionally, Bankruptcy Rule 3001(c) provides that for a proof of claim based on a writing, "the original or the duplicate shall be filed with the proof of claim" or "if the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Bankruptcy Rule 3001(c) is designed to provide the debtor with "fair notice of the conduct, transaction and occurrences that form the basis of the claim." *In re Sandifer*, 318 B.R. 609, 611 (Bankr. M.D. Fla. 2004). A creditor violates Bankruptcy Rule 3001(c) when he fails to attach any documentation evidencing the existence of the underlying claim or an explanation for why he has not done so. *ECast Settlement Corp. v. Tran (In re Tran)*, 369 B.R. 312, 316-17 (S.D. Tex. 2007); *In re Hight*, 393 B.R. 484, 493 n.7 (Bankr. S.D. Tex. 2008). As previously discussed, a creditor's failure to comply with Bankruptcy Rule 3001(c) strips a claim of prima facie validity. *In re Armstrong*, 320 B.R. at 104-05.

Here, although the claims of the Old Unsecured Creditors comprising Proof of Claim 88 are based on the 2005 Plan, and although the UCA has attached a statement to Proof of Claim 88 explaining this fact, the UCA did not attach the 2005 Plan to Proof of Claim 88. Additionally, although the UCA eventually provided a list of the outstanding claims of the Old Unsecured Creditors along with his 2019 Disclosures, he has made no move to supplement Proof of Claim 88 to include that list. That this Court presided over the First Case and that it has access to the record in that case does not somehow excuse the UCA from complying with Bankruptcy Rule 3001(c) in this Second Case.

> **b.    Proof of Claim 88 does not identify the claimant or the amount of each claim.**

Bankruptcy Rule 3001(a) requires that a proof of claim "shall conform substantially to the

appropriate official form"—Form 10. Form 10 instructs the preparer to provide the creditor's name and address and the basis for the creditors claim. Specifically, a proof of claim must include "the name of the person or entity asserting a claim," "the total amount owed to the creditor on the date of the [b]ankruptcy filing," and how the debt was incurred.

Proof of Claim 88 does not contain any of this information, nor could such information be gleaned from the record in the First Case. The claims of the Old Unsecured Creditors from the 2005 Plan were in the amount of $3,066,988.66, representing the aggregate of the scheduled claim values or—where the proof of claim has been filed—the amount from the proof of claim. Proof of Claim 88 asserts a general unsecured claim in the amount of $1,872,448.59 on behalf of the Old Unsecured Creditors. However, Proof of Claim 88 does not explain (1) which of the Old Unsecured Creditors have outstanding claims under the 2005 Plan, (2) the outstanding amount owed to each Old Unsecured Creditor, or (3) which Old Unsecured Creditors have already been paid in full. The UCA neglected to include this information even though it admits in its brief that the claims of some of the Old Unsecured Creditors have been fully paid and that the claims of others have been reduced since the 2005 Plan was confirmed. [Docket No. 225.] It is not possible to ascertain this information by reviewing the Debtor's schedules and the claims register in the First Case—neither sheds light on which Old Unsecured Creditors still have amounts owing under the 2005 Plan or the amount of their respective claims.

In sum, Proof of Claim 88 fails to identify the individual claimants, the outstanding amount due to each, or the underlying grounds on which the proof of claim is based. The UCA has made no attempt to amend Proof of Claim 88 to provide the information required by Bankruptcy Rule 3001 and Form 10; nor would this Court now allow him to do so, given that the bar date has long since

passed. *See supra* note 16. Further, for the reasons stated above, *supra* Part III(B)(1)(a), this Court will not retroactively acknowledge the UCA's untimely 2019 Disclosures as timely amendments to Proof of Claim 88. The UCA has failed to meet its burden to prove the validity of Proof of Claim 88 in the face of the Debtor's valid objection. *See In re Gilbreath*, 395 B.R. at 364. The Objection should therefore be sustained and Claim 88 should be disallowed.

3.     **Proof of Claim 88 contains duplicative claims.**

Proof of Claim 88 is comprised of all claims held by the Old Unsecured Creditors pursuant to the 2005 Plan. Specifically, Proof of Claim 88 contains "[a]llowed unsecured claims pursuant to prior confirmed plan." However, despite the UCA's allegation that he is authorized to represent all of the Old Unsecured Creditors, some of the Old Unsecured Creditors have filed individual proofs of claim in this Second Case. *See* Claims No. 5, 6, 13, 15, 17, 18, 25, 34, 39, 50, 52, 55, 57, 60, 71, 77, 78, 79, 83, 91, and 95. In some instances, the claim asserted by the UCA on behalf of a specific Old Unsecured Creditor is identical to the claim asserted by the Old Unsecured Creditor. *See* Addendum A.

It is therefore highly likely that some of the claims in Proof of Claim 88 overlap with those filed by the individual Old Unsecured Creditors. The court in *Continental Airlines* disallowed proofs of claim brought by a purported creditor representative, in part, because such claims "may duplicate or overlap the claims filed by the individuals." *In re Cont'l Airlines Corp.*, 64 B.R. at 880. This is precisely the case here. Allowing Proof of Claim 88 risks providing double recovery to certain Old Unsecured Creditors while at the same time diminishing the pool of assets available to unsecured creditors.

For all of these reasons, the Objection should be sustained.

## IV. CONCLUSION

The UCA does not have authority to represent the Old Unsecured Creditors in this Second Case solely by his appointment under the 2005 Plan. The tenuousness of his agency is exacerbated by his abject failure to disclose the nature and scope of his purported authority pursuant to Bankruptcy Rule 2019 and his total disregard for Bankruptcy Rule 3001 when filing Proof of Claim 88. For nearly one hundred days after the UCA filed Proof of Claim 88, he neglected to disclose the creditors he purports to represent, the amount of their respective claims, and the extent to which he is allegedly authorized to represent them. Only after the Debtor objected to Proof of Claim 88 and this Court concluded the hearing on the Objection did the UCA finally disclose the names and addresses of the Old Unsecured Creditors and the fact that he is only authorized to represent them with respect to certain claims.

Timely and complete disclosure lies at the heart of the bankruptcy process. "It is part of the Chapter 11 reorganization process that all matters should be done openly and subject to scrutiny, whether it s the proposal of a plan of reorganization, representation of the debtor, or representation of numerous creditors—secured or unsecured." *Okla. P.A.C. First Ltd. P'ship.*, 122 B.R. at 393. Even if this Court were to overlook the UCA's failures to disclose information about the creditors he purports to represent, the UCA cannot qualify as an agent with legal authority to represent creditors in this Second Case. That the UCA has been designated as the "unsecured creditor agent" pursuant to the 2005 Plan in the First Case does not constitute express authorization by the Old Unsecured Creditors that he represent their interests in this Second Case.

For all of the reasons set forth herein, the Court concludes that the Motion to Confirm Authority should be denied and the Objection to Proof of Claim 88 should be sustained.  Orders consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this opinion.


Signed on this 4th day of March, 2009

Jeff Bohm
United States Bankruptcy Judge